IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DEVON BARCHERDING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-914-KPJ |
| | § | |
| KILOLO KIJAKAZI,[1] | § | |
| *Acting Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Devon Barcherding ("Mr. Barcherding") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Having considered the briefs submitted by the parties and the administrative record, the Court finds the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

I.  **APPLICABLE LAW**

A.  **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

1

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B.   Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Mr. Barcherding was born in 1991, completed high school, and last worked as a sales associate at Lowe's Home Improvement.[4] *See* Tr. 17, 32–33, 37, 197. On July 7, 2018, Mr. Barcherding protectively filed applications for SSI and DIB. *See* Tr. 196–207. In both applications, Mr. Barcherding alleged disability since December 6, 2017, due to "severe depression, severe anxiety, and panic disorder." *See* Tr. 54–55, 65–66, 76–77, 196, 201. The Social Security Administration ("SSA") denied Mr. Barcherding's claims initially on December 19, 2018, and upon reconsideration on April 26, 2019. *See* Tr. 118–25, 129–33. Thereafter, Mr. Barcherding filed a written request for a hearing. *See* Tr. 136–37. On April 16, 2020, Administrative Law Judge Ralph F. Shilling (the "ALJ") held a hearing. *See* Tr. 29–53. The hearing was attended by Mr. Barcherding, his attorney, and a vocational expert (the "VE"). *See* Tr. 29.

On May 12, 2020, the ALJ issued an unfavorable decision denying Mr. Barcherding's claims. *See* Tr. 7–21. In his decision, the ALJ found that Mr. Barcherding met the insured status requirements of the Social Security Act (the "Act") through September 30, 2023. *See* Tr. 12. At step one, the ALJ found that Mr. Barcherding had not engaged in substantial gainful activity since December 6, 2017, his alleged onset date. *Id*. At step two, the ALJ found that Mr. Barcherding had the following severe impairments: depression; anxiety; and panic disorder. *Id*. The ALJ found that Mr. Barcherding's hypertension was a non-severe impairment; in addition, the ALJ determined that Mr. Barcherding's complaint of neuropathy was not a medically determinable impairment. *See* Tr. 13. At step three, the ALJ found that none of Mr. Barcherding's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 14–15. Because the ALJ found that none

---

[4] Documents 15-1 through 15-18 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

of the impairments met a Listing, the ALJ assessed Mr. Barcherding's RFC. *See* Tr. 15–19. The ALJ found Mr. Barcherding had the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: Applying the B criteria for the mental health issues and the four domains, [Mr. Barcherding] A) can understand, remember, and carry out short and simple tasks and instructions; B) [he] can have occasional contact with co-workers, and supervisors; [he] should have no public work activity C) the simple work activity should be routine and repetitive; D) [he] can ask simple questions and or request assistance.

*See* Tr. 15. At step four, the ALJ found that Mr. Barcherding was capable of performing his past relevant work as a warehouse worker. *See* Tr. 19. Accordingly, the ALJ concluded Mr. Barcherding was not disabled within the meaning of the Act. *See* Tr. 20.

Mr. Barcherding requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 193–95, 374–77. On September 23, 2020, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Mr. Barcherding filed his appeal to this Court on August 26, 2020.[5] *See* Dkt. 1.

### III. ANALYSIS

Mr. Barcherding raises two arguments on appeal. First, Mr. Barcherding argues the ALJ's mental RFC assessment is not supported by substantial evidence. *See* Dkt. 17 at 6–15.[6] Second, Mr. Barcherding contends the ALJ erroneously determined that he was able to perform his past relevant work. *See id.* at 15–16. As set forth below, the Court finds that Mr. Barcherding's argument concerning the ALJ's findings regarding his past relevant work is meritorious and, therefore, remand is warranted.

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

[6] The Court refers to the CM/ECF pagination in citing to Mr. Barcherding's brief.

**A. The ALJ's Findings Regarding Past Relevant Work**

Mr. Barcherding contends the ALJ erroneously determined that his prior work as a warehouse worker constituted past relevant work because "it met the recency, duration, and SGA [substantial gainful activity] requirements." *See* Tr. 20; Dkt. 17 at 15–16. "Past relevant work refers to work that was performed 'within the last 15 years, lasted long enough for the person to learn to do it and was substantial gainful activity.'" *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014) (quoting *Titles II & XVI: Past Relevant Work—the Particular Job or the Occupation As Generally Performed*, SSR 82–61, 1982 WL 31387 (1982)). "To determine whether work qualifies as past relevant work, it is necessary to understand what is meant by substantial gainful activity." *Id.*

Applicable social security regulations define substantial gainful activity as "work activity that is both substantial and gainful." 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity is work activity that involves doing significant physical or mental activities[,]" and "[g]ainful work activity is work activity that [a claimant does] for pay or profit." *Id.* §§ 404.1572(a)–(b), 416.972(a)–(b). In general, the Commissioner looks to five factors to determine whether a claimant has the ability to work at the substantial gainful activity level: (1) the nature of the claimant's work; (2) how well the claimant performs; (3) whether the claimant's work is done under special conditions; (4) whether the claimant is self-employed; and (5) time the claimant spends in work. *See* 20 C.F.R. §§ 404.1573(a)–(e), 416.973(a)–(e). The regulations direct the Commissioner to "consider all of the medical and vocational evidence in [the claimant's] file to decide whether or not [the claimant has] the ability to engage in substantial gainful activity." *Id.* §§ 404.1571, 416.971.

If a claimant "is unable, because of [his] impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that [the claimant is] not working at the substantial gainful activity level." *Id.* §§ 404.1573(b), 416.973(b). Moreover, if the claimant's "work is done under special conditions," the ALJ may find the work "does not show that [the claimant is] able to do substantial gainful activity." *Id.* §§ 404.1573(c), 416.973(c). Nonetheless, "work done under special conditions may show" that a claimant has "the necessary skills and ability to work at the substantial gainful activity level." *Id.* The regulations list examples of special conditions that may relate to an impairment:

> (1) [Claimant] required and received special assistance from other employees in performing [his] work;
>
> (2) [Claimant] w[as] allowed to work irregular hours or take frequent rest periods;
>
> (3) [Claimant] w[as] provided with special equipment or w[as] assigned work especially suited to [his] impairment;
>
> (4) [Claimant] w[as] able to work only because of specially arranged circumstances, for example, other persons helped [him] prepare for or get to and from [his] work;
>
> (5) [Claimant] w[as] permitted to work at a lower standard of productivity or efficiency than other employees"; or
>
> (6) [Claimant] w[as] given the opportunity to work despite [his] impairment because of family relationship, past association with [his] employer, or [his] employer's concern for [his] welfare.

*Id.* §§ 404.1573(c), 416.973(c). Separately, the regulations provide "several guides" to determine whether a claimant is "able to do substantial gainful activity." *Id.* §§ 404.1574, 416.974. "Generally, in evaluating [a claimant's] work activity for substantial gainful activity purposes, [the] primary consideration will be the earnings [the claimant] derive[s] from the work activity." *Id.* §§ 404.1574(a)(1), 416.974(a)(1). The regulations further specify that a claimant's earnings are

7

used to determine substantial gainful activity unless information is provided by the claimant, his/her employer, or others "that shows that [the SSA] should not count all of [the] earnings." *Id.* "Generally, if [the claimant] worked for substantial earnings, [the SSA] will find that [the claimant is] able to do substantial gainful activity." *Id.* The regulations likewise set income thresholds that establish compensation floors. *See id.* §§ 404.1574(b), 416.974(b).

Relevant here, earnings above the regulatory income thresholds are generally considered presumptive evidence of substantial gainful activity. *See White v. Heckler*, 740 F.2d 390, 394 (5th Cir. 1984); *Cooper v. Barnhart*, 55 F. App'x 716, 2002 WL 31933144, at *1 (5th Cir. 2002) (noting that earnings above the regulatory threshold are "presumptive proof of substantial gainful activity"); *Diana M. v. Comm'r of Soc. Sec.*, No. 5:19-cv-258, 2021 WL 3639751, at *4 (N.D. Tex. July 30, 2021), *R. & R. adopted*, 2021 WL 3633893 (N.D. Tex. Aug. 17, 2021) ("Where a claimant's monthly earnings exceed those indicated in the chart and related regulations at sections 404.1574(b)(2) and 416.974(b)(2), the Commissioner considers that as presumptive [substantial gainful activity]." (internal quotation marks and citation omitted)). However, the mere existence of earnings above the regulatory minimum is not dispositive of whether a claimant can engage in substantial gainful activity. In relevant part, a claimant may rebut the presumption with evidence of special conditions under which the claimant performed the work. *See* 20 C.F.R. § 404.1573(c) (list of special conditions); *see also Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 747 (6th Cir. 2018) ("The presumption may be rebutted based on the claimant's performance, 20 C.F.R. § 404.1573(b), or the special conditions attached to his work, *id.* § 404.1573(c), where the subsidy and impairment-related work expense framework does not adequately account for these factors.").

Here, in finding that Mr. Barcherding's job as a warehouse worker constituted past relevant work, the ALJ relied solely on evidence of Mr. Barcherding's earnings when assessing substantial gainful activity. *See* Tr. 20. In his past relevant work analysis, the ALJ stated:

> Finally, claimant's past work satisfies the SGA requirement. Specifically, claimant earned $18,235 in 2010; $14,188 in 2011, $17,546 in 2012, $18,610 in 2103 [sic], and $18,735 in 2014, all of which constitute substantial gainful activity for their respective years.

*Id.* (internal citations omitted). On appeal, among other arguments, Mr. Barcherding submits that the ALJ's analysis was insufficient because it failed to account for evidence he presented of special conditions under which he performed the warehouse worker job. *See* Dkt. 19 at 5–7.

Prior to the hearing, Mr. Barcherding's attorney submitted a brief to the ALJ in which he claimed that Mr. Barcherding had performed "one occupation at SGA [substantial gainful activity] levels, the occupation of warehouse worker." *See* Tr. 369. The brief additionally stated that Mr. Barcherding "worked for his father from 2009-2015[,]" *see* Tr. 368, but did not specify whether this employment corresponded to the warehouse worker position. During the hearing, the ALJ queried Mr. Barcherding regarding his employment with T&W Sales, which the ALJ thought might correspond to the work Mr. Barcherding did for his father. *See* Tr. 34. Mr. Barcherding clarified that it wasn't his father's company, but his father was the general manager and "pretty much oversaw everything." *See id.* At T&W Sales, Mr. Barcherding explained that he did "warehouse labor," a brief stint in a sales position which lasted about a week at most, followed by a return to warehouse work. *See* Tr. 35. Mr. Barcherding testified that the job stopped after the company closed. *Id.* Regarding the work itself, Mr. Barcherding testified that his father made it possible for him to have flexibility in his schedule based on his mental impairments: "[My dad] made it possible to where I was able to kind of come and go or set my schedule. You know, if I was having a really hard time one day he would let me come in late or he would let me leave early.

9

You know, I could take, like, an hour break or something or go sit in his office for a little bit and try and calm down and do a competent job[]." *See* Tr. 44. Mr. Barcherding indicated that he missed work at least once a week due to his mental impairments. *Id.* In addition, Mr. Barcherding testified that his father did not hold him to the same standards as other employees. *Id.* Mr. Barcherding also stated his high school friends worked in the warehouse with him and helped him with his job duties. *See* Tr. 43–44. Finally, Mr. Barcherding testified that his father "let [him] try" the sales job, but Mr. Barcherding encountered difficulties interacting with customers due to his mental impairments, and was only able to do the job for one or two weeks before moving back to the warehouse position. Tr. 44–45. After Mr. Barcherding's testimony, the ALJ heard from the VE, who classified Mr. Barcherding's past work for T&W Sales as a warehouse worker, which corresponded to DOT Listing 922.687-058, medium, SVP:2. *See* Tr. 50.

In his decision, the ALJ did not analyze any of the special conditions enumerated in § 404.1573(c) when he addressed Mr. Barcherding's job as a warehouse worker for T&W Sales. That is, the ALJ relied solely on income levels without considering Mr. Barcherding's vocational testimony, which referenced special work conditions: i.e., he was able to work in that position because his father was the general manager; he received assistance from his father and coworkers in his work duties; he was allowed to take frequent rest breaks and work irregular hours; and his father allowed him to miss at least one day of work per week due to his impairments. Mr. Barcherding's testimony was sufficient to raise a question, and rebut the presumption, that his earnings were proof of substantial gainful activity. As such, it was error for the ALJ to fail to address any of the special conditions listed in § 404.1573(c).

The Court further finds this error was not harmless because the VE did not testify regarding other jobs Mr. Barcherding could have performed with his RFC. Nor did the ALJ make any

10

alternate findings at step four. Thus, had the ALJ analyzed the question of special conditions, the ALJ may have made a different step four finding. Although the Commissioner appears to argue in a footnote that any error at step four was harmless because Mr. Barcherding performed the warehouse job for another employer as well, *see* Dkt. 18 at 13 n.4, the ALJ only considered the T&W Sales position in his step four analysis and never elicited testimony from Mr. Barcherding regarding any other warehouse position he may have held during the relevant time period. "To be sure, it remains possible that even work done under special conditions may show that a claimant has 'the necessary skills and ability to work at the substantial gainful activity level.'" *Cardew*, 896 F.3d at 748 (quoting 20 C.F.R. § 404.1573(c)). But the ALJ failed to undertake any analysis at step four regarding the special conditions to which Mr. Barcherding testified. Thus, in the absence of necessary legal analysis regarding special conditions, remand is warranted. *See Moseley v. Kijakazi*, No. 1:21-cv-201, 2022 WL 2824667, at *4–5 (S.D. Miss. June 17, 2022), *R. & R. adopted*, 2022 WL 2821942 (S.D. Miss. July 19, 2022) (reversing due to the ALJ's failure, at step four, to make any findings regarding unsuccessful work attempts under § 404.1574); *see Lagorio v. Saul*, 565 F. Supp. 3d 210, 218–19 (D.N.H. 2020) (finding reversible error where the ALJ failed to consider whether claimant worked under special conditions, as the claimant "testified to requiring and receiving special assistance from other employees in performing his job duties, requiring and taking frequent rest breaks, and being held to a lower standard of productivity than other employees").

As a final matter, the ALJ committed one other error at step four. In his step four findings, the ALJ indicated that Mr. Barcherding had past work as a corrections officer. *See* Tr. 20. As the Commissioner concedes, there is no record evidence that Mr. Barcherding ever worked as a corrections officer. The ALJ appears to have made a scrivener's error because the ALJ's remaining

11

step four analysis, including the DOT job listing information he provided, all corresponded to warehouse worker. *See* Tr. 20. On remand, the ALJ should also rectify this error.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

**So ORDERED and SIGNED this 23rd day of September, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE